**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 07-cv-02438-CMA-MEH
(Consolidated with Case No. 07-cv-02552-CMA-MEH)

CONAGRA TRADE GROUP, INC.,

      Plaintiff,

v.

FUEL EXPLORATION, LLC,

      Defendant.

---

## ORDER

---

    This matter is before the Court on Plaintiff/Consolidated Defendant ConAgra Trade Group, Inc.'s ("ConAgra") Motion for Summary Judgment (Doc. # 49) in its favor and against counterclaims filed by Defendant/Consolidated Plaintiff Fuel Exploration, LLC's ("Fuel Ex").  For the following reasons, the Motion (Doc. # 49) is GRANTED IN PART AND TAKEN UNDER CONSIDERATION IN PART.

## INTRODUCTION

    This is a breach of contract case.  On October 30, 2007, Fuel Ex filed a lawsuit against ConAgra in state court alleging breach of contract and seeking a declaratory judgment.  On November 20, 2007, ConAgra sued Fuel Ex in this Court, alleging one claim for breach of contract.[1]  On December 7, 2007, ConAgra removed the state court

---

[1] Fuel Ex did not serve ConAgra with process in the state court lawsuit until after ConAgra filed its federal lawsuit.

lawsuit and the Court consolidated the removed suit, captioned No. 07-cv-2552, with

ConAgra's federal suit, captioned No. 07-cv-2438, on January 4, 2008.  (Doc. # 16.)

ConAgra has now moved for summary judgment in its favor on its contract claim in the

federal suit, No. 07-cv-2438, and for dismissal via summary judgment of Fuel Ex's

counterclaims, which originated in the removed state court suit, No. 07-cv-2552.

## FACTUAL BACKGROUND

The following facts are derived from the record and are undisputed for purposes

of the Motion for Summary Judgment.  From 2006 through October 2007, ConAgra and

Fuel Ex bought and sold crude oil or options to purchase crude oil from each other.  The

parties transacted business using verbal agreements for each deal.  (Doc. # 63, Ex. 1 ¶

2.)  They would memorialize the transactions in writing after each oil/option order had

been placed.  (*Id.*)  Fuel Ex's sole business was engaging in these transactions with

ConAgra.

Apparently, ConAgra grew fearful of operating without a binding, written

agreement in place to govern the parties' relationship.  So, in August 2007, ConAgra

asked for and the parties began to negotiate a pair of written contracts.  (Doc. # 49, Ex.

1 ¶ 4.)  In September 2007, the parties executed a "Master Crude Oil Purchase and

Sale Agreement" ("Master Agreement") and a "Credit Support Annex to the Crude Oil

Master Agreement" ("Credit Agreement") (collectively, the contracts will be referred to

as the "Agreement").  (Doc. # 49, Ex. 3.)  The Agreement became effective on

September 1, 2007.  (*Id.*)

2

Fuel Ex's Manager, Raymond Danton, states that ConAgra demanded that Fuel Ex execute the Agreement or face dire consequences.  According to Mr. Danton, if Fuel Ex refused to execute the Agreement, ConAgra threatened to refuse to allow Fuel Ex to place additional orders to meet its obligations to deliver oil.  (Doc. # 63, Ex. 1 ¶ 3.)  Had ConAgra enforced these threats, Mr. Danton stated that it would have taken Fuel Ex approximately one month to purchase replacement oil from another vendor so that Fuel Ex could meet pre-existing obligations.  (*Id.*)  This delay would have caused Fuel Ex to suffer considerable financial hardship.  (*Id.*)

ConAgra alleges that Fuel Ex breached two provisions in the Agreement, one in the Credit Agreement and one in the Master Agreement.  The Credit Agreement allowed ConAgra to demand that Fuel Ex deliver a "margin payment" to ConAgra when the amount of the owed by Fuel Ex under the Agreement, the "settlement amount," exceeded Fuel Ex's credit limit of $500,000.  (Credit Agreement § 8.1.)  The amount of the margin payment equaled the difference between the settlement amount and the credit limit threshold amount (*i.e.,* settlement amount minus $500,000 equals margin payment).  (*Id.*)  The Credit Agreement required Fuel Ex to make the margin payment within two business days after the date Fuel Ex received a margin demand.  (*Id.*)

For its part, ConAgra also agreed to provide margin security if Fuel Ex demanded it.  (*Id.*)  The Credit Agreement also obligated ConAgra's parent corporation to provide a $15,000,000 guarantee to Fuel Ex for ConAgra's performance under the Agreement.  (*Id.* § 8.4.)  Moreover, under the Master Agreement, each party had the obligation to

3

"provide adequate assurances of its ability to perform all of its obligations under this Agreement within two (2) Business Days of a written request to do so when the other Party has reasonable grounds for insecurity."  (Master Agreement § 4.1(c).)

Failure by a party to make a timely margin payment or provide adequate assurances constituted an "Event of Default" under the Agreement.  (*Id.* § 4.1.)  If a party defaulted, the non-defaulting party had the right to

> liquidate any or all Transactions then outstanding by closing-out each Transaction being liquidated . . . calculating the Loss, if any, for each such Transaction, and aggregating or netting such amounts and . . . any or all other amounts owing under this Agreement to a single liquidated settlement payment that will be due and payable within one (1) Business Day after the liquidation is completed.

(*Id.* § 4.2(a).)  The Agreement defined "Loss" as the cost of entering into a replacement transaction.  (*Id.*)  The Agreement allowed the non-defaulting party to determine the amount of a Loss in a "commercially reasonable manner" by taking into account applicable market prices for similar transactions and delivery costs.  (*Id.*)

The Agreement did not last long.  On October 9, 2007, the settlement amount Fuel Ex owed to ConAgra under the Agreement exceeded Fuel Ex's $500,000 credit limit.  (Doc. # 49, Ex. 4.)  Thus, ConAgra demanded that Fuel Ex make a margin payment under the Credit Agreement.  (*Id.*)  ConAgra demanded payment of $2,508,000, which was the settlement amount ($3,383,631.34) less Fuel Ex's credit limit ($500,000), less the cash margin held by ConAgra ($376,440).  (*Id.*)  ConAgra's margin demand letter requested Fuel Ex to remit payment by the close of business on October 10, 2007.  (*Id.*)  Mr. Danton responded to ConAgra by e-mail.  (*Id.*, Ex. 5.)  He stated

4

that Fuel Ex disputed the margin demand and refused to make the payment.  (*Id.*)

In response to Mr. Danton's e-mail, ConAgra requested that Fuel Ex provide adequate assurances of Fuel Ex's ability to perform under the Agreement.  (*Id.*) ConAgra notified Fuel Ex that failure to provide adequate assurance under the Agreement would constitute default and that ConAgra would enforce its legal remedies against Fuel Ex.  (*Id.*)  Fuel Ex never provided assurances of its ability to perform.

On October 15, 2007, ConAgra sent Fuel Ex a "Notice of Default."  (*Id.*, Ex. 6.) The Notice stated that Fuel Ex had defaulted by failing to deliver the margin payment and failing to provide adequate assurances of its ability to perform under the Agreement.  (*Id.*)  On October 19, 2007, ConAgra notified Fuel Ex that ConAgra would close-out and liquidate all outstanding transactions and that Fuel Ex's final payment of $3,419,673.00 would be due one business day from the date of the letter.  (*Id.*, Ex. 8.) On October 31, 2007, ConAgra sent Mr. Danton a spreadsheet purporting to account for liquidation of the parties' outstanding transactions.  (*Id.*, Ex. 7.)  Fuel Ex has not made any payment to settle the account.

## PROCEDURAL BACKGROUND

As noted above, this case actually consists of two lawsuits, both dealing with the same parties, facts and contracts.  In the process of consolidation, Fuel Ex adopted its breach of contract and declaratory judgment claims from the removed state court case and plead them as counterclaims in its answer to ConAgra's federal complaint.  (Doc. # 18.)  Other than that, there is nothing particularly remarkable about the early procedural

history of this case.  However, the Motion for Summary Judgment contains some wrinkles and corollary requests that require an explanation.

Fuel Ex's original counsel withdrew from representation of Fuel Ex on November 17, 2008, (Doc. # 48) and ConAgra filed its Motion for Summary Judgment on January 5, 2009, at a point in time when Fuel Ex was unrepresented by counsel.  (Doc. # 49.) Fuel Ex attempted to respond to the Motion for Summary Judgment via a pleading signed by Mr. Danton.  (Doc. # 50.)  ConAgra moved to strike Mr. Danton's response because the response violated the prohibition on *pro se* representation of a corporate entity.[2]  (Doc. # 51.)  The Court granted the Motion to Strike.  (Doc. # 69.)  However, Fuel Ex eventually retained counsel and filed a compliant response to ConAgra's Motion for Summary Judgment.  (Doc. # 63.)  ConAgra then filed a reply in support of its Motion.  (Doc. # 70.)

In its compliant response brief, Fuel Ex contends that ConAgra has not properly supported its claim for damages and that Fuel Ex needs additional discovery to properly respond to the Motion for Summary Judgment.  (Doc. # 63 at 7-8.)  The Court might construe Fuel Ex's request as a Motion for Discovery under Federal Rule 56(f).  *See* Fed. R. Civ. P. 56(f).  However, to the extent that Fuel Ex moves for discovery in its response brief, that motion is now moot because one week after it filed its compliant response brief, Fuel Ex filed a separate "Motion to Reopen Discovery as to Damage

---

[2]  Fuel Ex did not really contest the Motion to Strike, but instead acknowledged that had drafted its response with the assistance of licensed counsel.  (Doc. # 50 at 8.)

6

Issues."  (Doc. # 66.)

The Court granted the Motion to Reopen Discovery and re-set certain discovery limits and deadlines.  (Doc. # 72.)  Notably, the Court allowed Fuel Ex to submit written discovery to ConAgra no later than March 30, 2009, with responses due April 29, 2009.  (*Id.*)  The Court also allowed Fuel Ex to depose a ConAgra representative regarding damages no later than May 15, 2009.  (*Id.*)  These additional discovery deadlines have passed, but the parties indicate in a Joint Motion to Continue the Pretrial Conference that they are still working on the damages discovery issue and that they anticipate they will complete discovery by September 2009.  (Doc. # 73.)

In its reply brief in support of summary judgment, ConAgra requests that the Court strike the supporting affidavit of Mr. Danton, which Fuel Ex attached to its response brief.  (Doc. # 70 at 7.)  ConAgra argues that Mr. Danton's affidavit contains impermissible legal conclusions and violates Federal Rule 56(e).  (*Id.*)  Although ConAgra has not separately moved to strike the affidavit,[3] ConAgra's request is briefly addressed below.

## ANALYSIS

## I.   STANDARD OF REVIEW

A plaintiff may move for summary judgment in its favor at any time after twenty days have passed from the commencement of the action or after an opposing party has

---

[3] Nor could ConAgra move to strike without filing a separate motion under the local rules.  *See* D.C.COLO.LCivR 7.1C.

moved for summary judgment.  *See* Fed. R. Civ. P. 56(a).  Courts should grant

summary judgment if "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact . . . ."  Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 250 (1986).  The movant bears the initial burden to show an

absence of evidence that would support the other side's case or defense.  *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the movant meets this burden, the

responding party must come forward with evidence to demonstrate a genuine issue of

material fact for trial.  *Id.*  A fact is material only if it "might affect the outcome of the suit

under governing law . . . ."  *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir.

1998).  On a motion for summary judgment, a court should view the record in a light

favorable to the non-movant.  *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d

1513, 1518 (10th Cir. 1994).

## II.    CONAGRA HAS ESTABLISHED A BREACH OF CONTRACT

A.    <u>Applicable Law – Elements of Breach of Contract</u>

ConAgra's only claim is for breach of the Agreement.  Under Colorado law, which

the parties selected in the Agreement, the elements of breach of contract are:  (1) the

existence of contract; (2) performance by the plaintiff; (3) failure to perform by the

defendant; and (4) damages.  *Western Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058

(Colo. 1992); *see also Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. Ct. App. 2008).

In this case, ConAgra has established that no issues of material fact exist regarding

Fuel Ex's liability for breach.  Thus, summary judgment in favor of ConAgra and against Fuel Ex's two claims is appropriate.

B.    <u>A Contract Existed Between the Parties</u>

In its declaratory judgment counterclaim, Fuel Ex alleged that the Agreement lacked consideration.  (*See* Doc. # 18.)  In response, ConAgra addressed the question of whether the Agreement was supported by valid consideration in the Motion for Summary Judgment.  (Doc. # 49 at 8-9.)  However, Fuel Ex appears to have abandoned this claim because it did not address this issue in its response to ConAgra's Motion for Summary Judgment.  The Court concludes that no questions of fact exist regarding the existence of a contract between the parties.

ConAgra and Fuel Ex signed both components of the Agreement – Master Agreement and Credit Agreement – and it became effective on September 1, 2007. Additionally, the Agreement reflects that both parties surrendered at least some legal rights for the benefit of one another.  For example, Fuel Ex agreed to the margin payment provisions and ConAgra's parent agreed to put up a guarantee.  Thus, the Agreement is supported by consideration.  *See Luby v. Jefferson County Bank of Lakewood*, 476 P.2d 292, 294 (Colo. Ct. App. 1970) ("A benefit to the promisor or a detriment to the promisee can constitute consideration, however slight") (quoting *Western Fed. Sav. & Loan Ass'n v. National Homes Corp.*, 445 P.2d 892 (Colo. 1968)).

Therefore, Fuel Ex has not met its burden to survive summary judgment on this element of ConAgra's claim or on this portion of its counterclaim.

C.      ConAgra Performed Its Obligations Under the Agreement

ConAgra's performance under the Agreement is likewise undisputed.  In response to the Motion for Summary Judgment, Fuel Ex does not argue that ConAgra failed to perform under the Agreement and the record contains no reference to such a failure.  Indeed, ConAgra's October 9, 2007 demand letter indicates that ConAgra made the margin demand at the time and in the manner contemplated under the Credit Agreement.  Per Section 4.1(c) of the Master Agreement, ConAgra also made a contractually-appropriate demand for adequate assurances that Fuel Ex could meet its future obligations under the Agreement.

In its counterclaim, Fuel Ex argues that ConAgra wrongfully liquidated Fuel Ex's positions and thereby breached provisions of the parties' confirmation contracts relating to earlier oil transactions.  (Doc. # 18.)  However, in its response to the Motion for Summary Judgment, Fuel Ex has not come forward with any evidence to rebut ConAgra's argument that ConAgra performed its duties under the Agreement.  Fuel Ex has also failed to explain how the earlier confirmation contracts survived the parties' execution of the Agreement, which was intended to supplant the multiple confirmation agreements.  Further, Fuel Ex did not identify specifically which provisions in the confirmation contracts ConAgra supposedly breached.  As such, the Court finds no question of material fact regarding ConAgra's performance under the Agreement and no question of material fact regarding ConAgra's performance under the confirmation contracts.

D.     Fuel Ex Failed to Perform Its Obligations Under the Agreement

Regarding the third element of ConAgra's claim, there is no question that Fuel Ex

failed to perform under the Agreement.

The contract provisions at issue are clear and unambiguous:  (1) under the Credit

Agreement, Fuel Ex was obligated to pay the margin amount within two business days

of a demand by ConAgra; and (2) under the Master Agreement, Fuel Ex was obligated

to provide adequate assurances of its ability to perform if ConAgra had reasonable

doubts about Fuel Ex's ability to comply with the Agreement.  Mr. Danton's October 10,

2007 e-mail establishes that Fuel Ex, without explanation, failed to provide a margin

payment.  Further, the record contains no evidence that Fuel Ex provided adequate

assurances, as required by the Master Agreement.  By failing to comply with the margin

payment and adequate assurance provisions of the Agreement, Fuel Ex breached the

parties' contract.

In short, there is no question of material fact on the liability component of

ConAgra's breach of contract claim.

**III.     THE AGREEMENT IS ENFORCEABLE**

Fuel Ex does not seriously dispute that it breached the Agreement by failing to

make a timely margin payment or provide adequate assurances to ConAgra.  Instead,

Fuel Ex argues that the Agreement is unenforceable and that it should be released from

liability for two reasons.  First, Fuel Ex argues that the Court cannot enforce the

Agreement because of the doctrine of duress.  Second, Fuel Ex argues that the doctrine

11

of promissory estoppel bars enforcement of the Agreement.  As discussed below,

neither doctrine requires the Court to void the Agreement or otherwise release Fuel Ex

from liability.

      A.     <u>Fuel Ex Cannot Show Duress</u>

Fuel Ex argues that this Court should void the Agreement because Fuel Ex

entered into the contract under duress.  The Court disagrees.

      1.    *Applicable Law – Formation of a Contract Under Duress*

"A contract is voidable on the grounds of duress if a party's manifestation of

assent is induced by an improper threat that leaves no reasonable alternative."

*Vail/Arrowhead, Inc. v. District Court for Fifth Judicial Dist., Eagle County*, 954 P.2d 608,

612 (Colo. 1998) (en banc); *Premier Farm Credit, PCA v. W-Cattle, LLC*, 155 P.3d 504,

521 (Colo. Ct. App. 2006).  Although the concept of duress has expanded since the

days of common law, not all coercive business practices amount to duress.  *See*

*Cooper v. Flagstaff Realty*, 634 P.2d 1013, 1015 (Colo. Ct. App. 1981).  A party that

coerces another into signing a contract by threatening to take an action that it has a

legal right to take does not inflict duress sufficient to void the contract.  *See DeJean v.*

*United Airlines, Inc.*, 839 P.3d 1153, 1160 (Colo. 1992); *Cooper*, 634 P.2d at 1015.

The party seeking to avoid enforcement of a contract must show that the "force

or threats employed actually subjugated the mind and will of the person against whom

they were directed, and were thus the sole and efficient cause of the action which he

took."  *Wiesen v. Short*, 604 P.2d 1191, 1192 (Colo. Ct. App. 1979) (quoting *Hastain v.*

*Greenbaum*, 470 P.2d 741 (Kan. 1970)).  Under *Wiesen*, courts must look to the effect

of any threat on the recipient and whether the threat effectively removed the recipient's

ability to select a reasonable alternative to executing the challenged contract.  *See*

*Vail/Arrowhead*, 954 P.2d at 613 ("An improper threat does not constitute economic

duress if the victim fails to pursue a reasonable alternative but instead yields to the

threat."); *Wiesen*, 604 P.2d at 1192 (notwithstanding threats of litigation, court declined

to invalidate an agreement when party "discussed [the] matter with a lawyer, and had an

opportunity to reflect").

    In reviewing whether the recipient of a threat was deprived of a reasonable

alternative, the Colorado Supreme Court and the Restatement (Second) of Contracts

have suggested that courts may look to the nature of the bargain that the parties strike;

if the resulting agreement is shocking or unreasonably unfair, the implication is that the

threat was sufficiently coercive and duress is a valid basis to void the contract.  *See*

*Vail/Arrowhead*, 954 P.2d at 613 ("The fairness of the resulting exchange is often a

critical factor in cases involving threats.")  Of course, the opposite is also true, if the

agreement appears reasonable, the implication is that duress was not a factor in its

formation.

    Typically, the existence of duress is a question of fact, but courts may resolve it

on summary judgment if the party arguing duress cannot establish a triable issue of fact.

*See Premier Farm Credit*, 155 P.3d at 521.

    2.    *Fuel Ex Has Not Raised a Triable Issue of Fact Regarding Duress*

Fuel Ex argues that ConAgra coerced it into executing the Agreement by threatening to "cease to allow [Fuel Ex] to exercise its right under the existing contractual relationship to place orders to buy oil in order to satisfy its obligation to deliver oil." (Doc. # 63, Ex. 1 ¶ 3.)  ConAgra states that it never threatened Mr. Danton or Fuel Ex, and that even if it did coerce Fuel Ex into signing the Agreement, ConAgra had the legal right to go through with the actions it is alleged to have threatened Fuel Ex with.

The Court agrees with ConAgra that Fuel Ex cannot show that ConAgra's threats to withhold future business were improper or unreasonably coercive.  Fuel Ex claims that, if acted upon, ConAgra's threats would have "contravened the terms of the existing contractual arrangement between the parties as to previously placed orders" (Doc. # 63, Ex. 1 ¶ 3), but this allegation is unsupported by the facts in the record.  The undisputed evidence shows that Fuel Ex and ConAgra consummated each transaction in 2006 and 2007 on a verbal basis and then memorialized the deal in writing.  This pattern of prior purchases does not automatically obligate ConAgra to make future purchases. Although Fuel Ex may have wanted to continue the parties' business dealings indefinitely, ConAgra did not have a legal obligation to continue doing business with Fuel Ex.  Indeed, Fuel Ex admitted in discovery that no written agreement obligated ConAgra to enter into future transactions with Fuel Ex.

Moreover, Fuel Ex does not point to any evidence in the record demonstrating how ConAgra's threat not to purchase additional oil from Fuel Ex would contravene the

14

parties' prior confirmation contracts.  Nothing in the exemplar confirmation contract provided by ConAgra obligates ConAgra to enter future transactions.  Thus, it appears that ConAgra threatened Fuel Ex with action that ConAgra had a legal right to take if Fuel Ex declined to execute the Agreement.  *See DeJean*, 839 P.2d at 1160; *Cooper*, 634 P.2d at 1015.

There is no question that Fuel Ex had reasonable alternatives to signing the Agreement.  Although ConAgra may have been Fuel Ex's only trading partner in the past, Fuel Ex cannot show that ConAgra was the only vendor of crude oil available. Fuel Ex concedes that if ConAgra refused to participate in future transactions, it would have taken Fuel Ex only one month to secure a replacement vendor to purchase oil involved in the ConAgra transactions.  In other words, Fuel Ex concedes that reasonable alternatives were available and that it would take Fuel Ex only one month to find them.  Perhaps if Fuel Ex and ConAgra were dealing with a unique or rare commodity like uranium or kryptonite, such that it would have taken Fuel Ex many months or years to find a suitable replacement vendor, the result of the Court's duress analysis would change.  However, that is not the case since crude oil is a relatively fungible commodity with many reasonable alternative suppliers.

In addition, Fuel Ex had discussions with its lawyer and accountant related to the Agreement.  Fuel Ex's consultations with counsel preclude any reasonable jury from finding that Fuel Ex was beholden to ConAgra's demands or left without a reasonable alternative to signing the Agreement.  *See Wiesen*, 604 P.2d at 1192.  Fuel Ex also

admits that it had approximately four to six weeks within which to sign the Agreement. This lull between the beginning of negotiations and execution of the Agreement presented Fuel Ex with ample time, *i.e.*, approximately one month, to consider the Agreement and locate a replacement vendor if it had wanted to do so.  Fuel Ex's failure to explore alternative crude oil vendors leads the Court to conclude that Fuel Ex played a large role in creating the financial bind of which it now complains.  As the Colorado Court of Appeals has noted, a financial bind created by a party's own doing will not support a finding of duress.  *See Premier Farm Credit*, 155 P.3d at 521.

Further, the terms of the Master Agreement and the Credit Agreement are not shocking or surprising enough to indicate that ConAgra's threats actually subjugated Fuel Ex's free will in signing those contracts.  For example, the default provision in the Master Agreement did not differ drastically from the default provision in the written confirmation contracts the parties had previously used in their relationship.  Both the Master Agreement and the confirmation contracts required the defaulting party to pay the non-defaulting party any amounts due within one business day of a demand therfor. Likewise, the Credit Agreement was not totally one-sided or draconian from Fuel Ex's point of view.  ConAgra allowed Fuel Ex a $500,000 credit line and ConAgra's parent corporation even put up $15,000,000 in guarantee money.  Thus, the Court cannot say that the agreement produced by ConAgra's alleged coercion was so shocking or unfair that it would raise red flags regarding the issue of duress during the negotiation process.  *Cf. Vail/Arrowhead*, 954 P.2d at 613.

In short, this is not a case where ConAgra held the proverbial gun to Fuel Ex's head and forced Fuel Ex into an unreasonable arrangement.  Thus, the Court concludes that no reasonable jury would find Fuel Ex acted under duress when it signed the Agreement.

As such, summary judgment is appropriate on Fuel Ex's affirmative defense and declaratory judgment counterclaim.

B.   Promissory Estoppel Does Not Apply in This Case

Fuel Ex also contends that ConAgra made an oral promise to Mr. Danton that if Fuel Ex signed the Agreement, ConAgra would allow Fuel Ex additional time to satisfy ConAgra's demand for a margin payment.  Fuel Ex argues that it reasonably relied on this oral promise for an extension of time when it executed the Agreement.  Thus, Fuel Ex contends this Court should enforce the oral promise under an estoppel theory and allow Fuel Ex extra time to respond to ConAgra's October 9, 2007 margin payment demand.  Fuel Ex's argument is unavailing for at least three reasons.

First, a promissory estoppel theory like the one Fuel Ex argues for in this case, does not apply when the terms of a written contract contravene the alleged oral promises.  *See Wheat Ridge Urban Renewal Auth. v. Cornerstone Group XXII, LLC*, 176 P.3d 737, 741 (Colo. 2007) ("Recovery on a theory of promissory estoppel is incompatible with the existence of an enforceable written contract.") (citing *Scott Co. of*

*Cal. v. MK-Ferguson Co.*, 832 P.2d 1000, 1003 (Colo. Ct. App. 1992)).[4]  ConAgra's

purported oral promises to Mr. Danton directly contradict the provisions contained in the

written Agreement.  Thus, the written provisions of the Agreement will control over any

alleged, extrinsic oral promises.

Second, the parol evidence rule precludes this Court from considering extrinsic

evidence to expand or alter the meaning of an unambiguous, written contractual

provision.  *See Boyer v. Karakehian*, 915 P.2d 1295, 1299-1300 (Colo. 1996) ("In the

absence of allegations of fraud, accident, or mistake in the formation of the contract,

parol evidence may not be admitted to add to, subtract from, vary, contradict, change,

or modify an unambiguous integrated contract."); *see also O'Reilly v. Physicians Mut.

Ins. Co.*, 992 P.2d 644, 647 (Colo. Ct. App. 1999) ("Once a court makes a finding that

an agreement is unambiguous, the court may not look beyond the four corners of the

agreement in order to determine the meaning intended by the parties.") (citing *USI

Props. E., Inc. v. Simpson*, 938 P.2d 168 (Colo. 1997)).  In this case, the margin

demand and adequate assurances provisions of the Agreement are clear and

unambiguous.  Thus, this Court may not consider Mr. Danton's allegations of an

extrinsic, oral promise that would directly contradict and/or alter the parties' agreed-

upon, written language.

Third, the Agreement contains an integration clause, which states:  "This

---

[4]  Moreover, Fuel Ex misconstrues the theory of promissory estoppel.  As the cited cases make clear, promissory estoppel is an affirmative claim for relief plead in the absence of a written agreement, it is not a defense to enforcement of a contract.

Agreement constitutes the entire agreement between the Parties relating to the subject matter contemplated by this Agreement." (Master Agreement § 8.9.) Thus, the Agreement itself reflects that Mr. Danton's allegations of an extension of time to make the margin payment cannot alter the terms of the Agreement.

As with the defense of duress, Fuel Ex fails to raise an issue of fact regarding application of promissory estoppel to void the Agreement. Thus, because both of Fuel Ex's defenses fail to raise a question of fact for trial, summary judgment in favor of ConAgra on its breach of contract claim is appropriate.

However, outstanding issues remain regarding ConAgra's damages.

## IV.    DAMAGES

ConAgra has established that it suffered at least some damages as a result of Fuel Ex's breach of the Agreement. Thus, it has met its burden to demonstrate that it is entitled to summary judgment on its breach of contract claim.

However, questions of material fact remain regarding the exact amount of ConAgra's damages. As Fuel Ex points out, ConAgra has not properly backed up its damages figure with evidence of replacement transactions. Moreover, given the fact that the parties have not completed discovery into the amount of ConAgra's damages (Doc. # 73), the Court will defer ruling on ConAgra's request for damages until Fuel Ex and ConAgra have had a chance to supplement their positions on this issue. At that point, the Court will revisit the damages issue and issue such orders and schedule any hearings it deems necessary.

19

**V.      FUEL EX'S COUNTERCLAIMS**

As noted above, Fuel Ex alleges two counterclaims, breach of contract and declaratory judgment, both of which ConAgra seeks to dismiss on summary judgment.

Regarding the breach of contract counterclaim, Fuel Ex alleges that ConAgra wrongfully liquidated Fuel Ex's positions under the Agreement.  Fuel Ex contends that ConAgra's wrongful liquidation constituted a breach of prior confirmation agreements between the parties.  As discussed above, the Court has concluded that Fuel Ex breached the Agreement by defaulting on ConAgra's margin demand and by failing to provide adequate assurances.  Thus, ConAgra had the right to liquidate Fuel Ex's positions under the default provisions in the Master Agreement.  Since ConAgra has shown that it acted properly in liquidating Fuel Ex's positions under the Agreement and since Fuel has identified no other actions that might constitute a breach of contract, Fuel Ex's breach of contract claim cannot survive summary judgment.

Regarding Fuel Ex's declaratory judgment counterclaim, Fuel Ex asks the Court to void the Agreement for two of the same reasons it seeks to avoid liability for breach of contract:  (1) duress; and (2) lack of consideration.  As discussed above, ConAgra has shown that no questions of material fact exist on either of those contractual theories.  As such, summary judgment dismissing this claim is also appropriate.

**VI.      RULE 56(f) MOTION AND MOTION TO STRIKE AFFIDAVIT**

Regarding the miscellaneous matters raised in the parties summary judgment briefing, the Court denies as moot Fuel Ex's Rule 56(f) request for discovery on the

damages issue because the Court granted Fuel Ex's Motion to Reopen Discovery.

Finally, ConAgra has requested that the Court strike Mr. Danton's affidavit, which Fuel Ex attached to its response to the Motion for Summary Judgment.  (*See* Docs. # 69, Ex. A & 70.)  The Court denies ConAgra's request to "strike" the affidavit because, although the affidavit contains some impermissible, self-serving statements, the Court has excluded offending material in making its ruling.  *See Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005) (discussing admissibility of evidence at summary judgment stage).

## CONCLUSION

ConAgra has established that no issues of material fact remain regarding the existence of a valid and binding contract and the breach of such contract by Fuel Ex. Moreover, there are no disputed issues of material fact relating to Fuel Ex's counterclaims and defenses, ConAgra is entitled to judgment of liability against Fuel Ex on the Agreement.  However, factual questions remain regarding the exact amount of ConAgra's damages.

Accordingly, ConAgra's Motion for Summary Judgment (Doc. # 49) is GRANTED IN PART AND TAKEN UNDER ADVISEMENT IN PART.  The Motion is GRANTED to the extent that all issues of liability are hereby resolved in favor of ConAgra and Fuel Ex's counterclaims are DISMISSED WITH PREJUDICE.  The Motion is TAKEN UNDER ADVISEMENT to determine the amount of damages suffered by ConAgra.  Each party will bear its own costs.

IT IS FURTHER ORDERED that the Joint Motion and Stipulation to Continue the

Pretrial Conference (Doc. # 73) is referred to the magistrate judge for further handling

and scheduling.

DATED:  June 3, 2009.

BY THE COURT:

_____

CHRISTINE M. ARGUELLO
United States District Judge